21 Cal.Rptr.3d 179 (2004)
34 Cal.4th 535
100 P.3d 870
The PEOPLE, Plaintiff and Respondent,
v.
William Harlow SEEL, Defendant and Appellant.
No. S106273.
Supreme Court of California.
November 29, 2004.
Law Offices of Dennis A. Fischer, Dennis A. Fischer, Santa Monica, and John M. Bishop for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz, Donald E. De Nicola and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.
*180 CHIN, J.
In 1996, we held that an allegation prescribing a greater punishment for an attempt to commit murder that is "willful, deliberate, and premeditated" (Pen.Code,[1] § 664, subd. (a) (section 664(a)) constituted a penalty provision to which double jeopardy protections do not apply. (People v. Bright (1996) 12 Cal.4th 652, 656-657, 49 Cal.Rptr.2d 732, 909 P.2d 1354 (Bright).) Several years later, in a case not involving double jeopardy, the United States Supreme Court concluded that any fact other than a prior conviction that increases punishment beyond the prescribed statutory maximum "is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." (Apprendi v. New Jersey (2000) 530 U.S. 466, 494, fn. 19, 120 S.Ct. 2348, 147 L.Ed.2d 435, (Apprendi).)[2]
In light of Apprendi and related cases, we must decide whether double jeopardy protections preclude a retrial of the premeditation allegation (§ 664(a)) after an appellate finding of evidentiary insufficiency. For reasons that follow, we conclude that the federal double jeopardy clause (U.S. Const., 5th Amend.) bars retrial.

I. FACTUAL AND PROCEDURAL BACKGROUND
This background is largely drawn from the Court of Appeal's unpublished opinion.
On May 1, 1999, around 11:00 p.m., John Park and three friends, Nathan Yoshizaki, Leland Fong, and Eric Shing, went out for dinner. Yoshizaki drove the group to a restaurant and parked his car in the parking lot. Defendant William Harlow Seel and a female companion, Shanda Bustamante, left the restaurant and got into defendant's car. As defendant drove out of the parking lot, Park, who was standing in front of the restaurant, heard gunfire, dropped to the ground, and took cover on the right side of Yoshizaki's car. Park and his friends had exchanged no words or gestures with defendant or Bustamante. However, Park had glanced over at defendant's car more than once because he *181 "heard the exhaust." Yoshizaki's car had a bullet hole near the left headlight and the bumper. That was "essentially ... exactly where [Park] walked past" as he was going toward the restaurant.
At trial, defendant testified that when he parked his car in the restaurant's lot, Park and his friends drove up and parked one space away from him. One or two of the men got out of their car, and defendant entered the restaurant to pick up Bustamante. The men started yelling, and defendant believed there was going to be trouble. As defendant and Bustamante left the restaurant and walked toward defendant's car, defendant and the other males looked at each other. Defendant became "increasingly fearful" because of the way the four men were looking at him. He "just felt like something bad was going to happen." As defendant drove out of the parking lot and onto the street, he fired his gun "toward the air like above their car, around that area." He fired three rounds. He "felt kind of paranoid and stuff." He did not plan to shoot or kill Park and did not even know him. Defendant said he kept the gun in his car for protection. He also testified that he had smoked methamphetamine earlier that day and was not "thinking clearly."
A jury convicted defendant of the attempted premeditated murder of Park (§§ 664(a), 187, subd. (a)) and found that he personally and intentionally discharged a firearm. (§ 12022.53, subd. (c).) The trial court imposed a sentence of life imprisonment with the possibility of parole, plus 20 years for the section 12022.53, subdivision (c), allegation. Defendant appealed.
Among other things, defendant argued that there was no substantial evidence of premeditation or deliberation. The Court of Appeal agreed. It concluded, "The finding of premeditation and deliberation, therefore, must be reversed and the matter remanded for retrial on the penalty allegation. (See People v. Bright (1996) 12 Cal.4th 652, 671 [49 Cal.Rptr.2d 732, 909 P.2d 1354].)"
We granted defendant's petition for review, limited to the issue whether the premeditation allegation (§ 664(a)) may be retried.

II. DISCUSSION
As relevant here, section 664(a) provides that a defendant convicted of attempted murder is subject to a sentence of life with the possibility of parole if the jury finds that the attempted murder was "willful, deliberate, and premeditated murder, as defined in section 189." (§ 664(a); see Bright, supra, 12 Cal.4th at p. 665, 49 Cal.Rptr.2d 732, 909 P.2d 1354.) Unless the jury finds this premeditation allegation to be true, a defendant convicted of attempted murder is subject to a determinate sentence of five, seven, or nine years. (§ 664(a).)
Defendant here argues that the Court of Appeal's finding that the evidence was insufficient to support the premeditation allegation (§ 664(a)) constituted an acquittal for double jeopardy purposes, thus barring retrial. (See Burks v. United States (1978) 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (Burks).) However, in Bright we held that section 664(a) is a penalty provision to which double jeopardy protections do not apply. (Bright, supra, 12 Cal.4th at p. 671, 49 Cal.Rptr.2d 732, 909 P.2d 1354.) Also, the high court, in affirming our decision in People v. Monge (1997) 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121 (lead opn. of Chin, J.) (Monge I), held that the double jeopardy clause does not bar retrial of a prior conviction allegation after an appellate finding of evidentiary insufficiency. (Monge v. California *182 (1998) 524 U.S. 721, 734, 118 S.Ct. 2246, 141 L.Ed.2d 615 (Monge II).)
Defendant seeks support in Apprendi, supra, 530 U.S. 466, 120 S.Ct. 2348, a sentence enhancement case not involving double jeopardy. In Apprendi, the high court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Id. at p. 490, 120 S.Ct. 2348.) With respect to these constitutional protections at least, the high court made clear that "[m]erely using the label `sentence enhancement'" does not preclude treating the enhancement as an element of an offense. (Apprendi, supra, 530 U.S. at p. 476, 120 S.Ct. 2348.)
The question here is, does Apprendi affect our holding in Bright? Does section 664(a), though designated a penalty provision (Bright, supra, 12 Cal.4th at p. 669, 49 Cal.Rptr.2d 732, 909 P.2d 1354), constitute an element of an offense for double jeopardy purposes? (See Apprendi, supra, 530 U.S. at p. 494, fn. 19, 120 S.Ct. 2348.) For reasons that follow, we conclude it does. Because the premeditation allegation (§ 664(a)) effectively placed defendant in jeopardy for an "offense" greater than attempted murder (Apprendi, supra, 530 U.S. at p. 494, fn. 19, 120 S.Ct. 2348; see Monge II, supra, 524 U.S. at pp. 728-729, 118 S.Ct. 2246), the Court of Appeal's finding of evidentiary insufficiency bars retrial of the allegation under the federal double jeopardy clause. (Burks, supra, 437 U.S. at p. 16, 98 S.Ct. 2141; U.S. Const., 5th Amend.)

A. Double jeopardy protections
The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 15 of the California Constitution guarantee that a person may not be placed twice "in jeopardy" for the "same offense." (See Bright, supra, 12 Cal.4th at p. 660, 49 Cal.Rptr.2d 732, 909 P.2d 1354.) "The double jeopardy bar protects against a second prosecution for the same offense following an acquittal or conviction, and also protects against multiple punishment for the same offense. [Citations.]" (Ibid.) In addition, because greater and lesser included offenses constitute the "same offense" for double jeopardy purposes (ibid.), "a conviction of a lesser included offense bars subsequent prosecution of the greater offense. [Citations.]" (Id. at p. 661, 49 Cal.Rptr.2d 732, 909 P.2d 1354.)
As noted above, the same protections generally do not extend to noncapital sentencing proceedings, or at least not to those involving prior conviction allegations. (Monge II, supra, 524 U.S. at pp. 728, 730, 118 S.Ct. 2246; Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121; but see People v. Hernandez (1998) 19 Cal.4th 835, 80 Cal.Rptr.2d 754, 968 P.2d 465 (Hernandez) [hearing on an enhancement is not a court trial].) For purposes of double jeopardy, the high court recognized in Monge II that an appellate finding that the evidence was insufficient to sustain a conviction was "comparable to an acquittal" and thus barred a second trial. (Monge II, supra, 524 U.S. at p. 729, 118 S.Ct. 2246, citing Burks, supra, 437 U.S. at p. 16, 98 S.Ct. 2141.) However, it also concluded that "[w]here a similar failure of proof occurs in a sentencing proceeding ... the analogy is inapt." (Monge II, supra, 524 U.S. at p. 729, 118 S.Ct. 2246; see also People v. Barragan (2004) 32 Cal.4th 236, 241, 9 Cal.Rptr.3d 76, 83 P.3d 480.)
In reaching this conclusion, the high court emphasized that sentencing determinations "do not place a defendant in jeopardy for an `offense,' [citation]. Nor have *183 sentence enhancements been construed as additional punishment for the previous offense; rather, they act to increase a sentence `because of the manner in which [the defendant] committed the crime of conviction.' [Citations.] An enhanced sentence imposed on a persistent offender thus `is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes' but as `a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.' [Citations.]" (Monge II, supra, 524 U.S. at p. 728, 118 S.Ct. 2246; but see id. at pp. 737-741, 118 S.Ct. 2246 (dis. opn. of Scalia, J.) [arguing recidivism enhancement constitutes an element of the offense].) "The Double Jeopardy Clause `does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be.' [Citation.] Consequently, it is a `well-established part of our constitutional jurisprudence' that the guarantee against double jeopardy neither prevents the prosecution from seeking review of a sentence nor restricts the length of a sentence imposed upon retrial after a defendant's successful appeal. [Citations.]" (Monge II, supra, 524 U.S. at p. 730, 118 S.Ct. 2246.)
As discussed above, in 1996 we held that the double jeopardy prohibition did not bar retrial of an allegation that an attempted murder was "willful, deliberate, and premeditated" under section 664(a). (Bright, supra, 12 Cal.4th at p. 671, 49 Cal.Rptr.2d 732, 909 P.2d 1354; see also id. at pp. 671-683, 49 Cal.Rptr.2d 732, 909 P.2d 1354 (dis. opn. of Mosk, J.); id. at pp. 683-693, 49 Cal.Rptr.2d 732, 909 P.2d 1354 (dis. opn. of Kennard, J.).) In arguing that double jeopardy protections bar retrial on the section 664(a) allegation in his case, defendant here contends that Bright, supra, 12 Cal.4th 652, 49 Cal.Rptr.2d 732, 909 P.2d 1354, is distinguishable and that Burks, supra, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, controls. He also maintains that Apprendi, supra, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, is relevant here, even though it did not involve double jeopardy principles, because the penalty of life imprisonment prescribed by section 664(a) increased his sentence beyond the statutory maximum. We discuss these cases below.

B. Bright

In Bright, a jury convicted the defendant of attempted murder (§§ 189, 664), but was unable to make a finding on the separate allegation of premeditation. (Bright, supra, 12 Cal.4th at p. 658, 49 Cal.Rptr.2d 732, 909 P.2d 1354.) The trial court declared a mistrial as to the premeditation allegation and set the matter for retrial on the allegation. After the court rejected his motion to dismiss the premeditation allegation based on evidentiary insufficiency, defendant Bright moved to dismiss on the ground that he already had been placed in jeopardy for the attempted premeditated murder charge. (Id. at pp. 658-659, 49 Cal.Rptr.2d 732, 909 P.2d 1354.) He argued that the offense of attempted murder was divided into first and second degrees. By alleging that the defendant "did willfully, deliberately, and premeditatedly attempt to murder," the information charged him with first degree attempted murder. (Id. at p. 659, 49 Cal.Rptr.2d 732, 909 P.2d 1354.) Because the jury found Bright guilty of attempted murder without specifying the degree, he argued he was guilty of second degree attempted murder, a lesser offense included within the offense of attempted premeditated murder. Thus, he asserted, double jeopardy principles prohibited retrial of the greater offense of attempted premeditated murder. (Ibid.)
We rejected defendant Bright's underlying premise that attempted murder was *184 divided into degrees. (Bright, supra, 12 Cal.4th at pp. 665-669, 49 Cal.Rptr.2d 732, 909 P.2d 1354.) After reviewing the statutory language and legislative history of section 664(a), we concluded that for double jeopardy purposes, the premeditation allegation (§ 664(a)) constituted a penalty provision and not an element of the crime. (Bright, supra, 12 Cal.4th at p. 669, 49 Cal.Rptr.2d 732, 909 P.2d 1354.) "The jury does not decide the truth of the penalty allegation until it first has reached a verdict on the substantive offense charged. [Citation.] Accordingly, a defendant's conviction of the underlying substantive offense does not (on double jeopardy grounds) bar further proceedings, such as retrial, on a penalty allegation. [Citation.] Thus, the circumstance that the jury has returned a verdict on the underlying offense, but is unable to make a finding on the penalty allegation, does not constitute an `acquittal' of (or otherwise bar retrial of) the penalty allegation on the ground of double jeopardy. [Citations.]" (Id. at pp. 661-662, 49 Cal.Rptr.2d 732, 909 P.2d 1354.)
Defendant here maintains that Bright, supra, 12 Cal.4th 652, 49 Cal.Rptr.2d 732, 909 P.2d 1354, is distinguishable because in that case, the trial court declared a mistrial after the jury deadlocked on the section 664(a) penalty allegation. (Tibbs v. Florida (1982) 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (Tibbs) ["A deadlocked jury... does not result in an acquittal barring retrial under the Double Jeopardy Clause"].) Here, the Court of Appeal concluded there was "no evidence" of premeditation and deliberation (§ 664(a)), reversed the jury's finding, and remanded the matter for retrial on the penalty allegation. Relying on Burks, supra, 437 U.S. 1, 98 S.Ct. 2141, and related cases, defendant asserts that a reversal based on insufficient evidence is equivalent to an acquittal and thus precludes retrial of the penalty allegation.
In Burks, the high court held that the double jeopardy clause precludes a second trial after a conviction is reversed based solely on insufficient evidence. (Burks, supra, 437 U.S. at p. 18, 98 S.Ct. 2141.) Unlike a reversal for trial error, which "does not constitute a decision to the effect that the government has failed to prove its case" (id. at p. 15, 98 S.Ct. 2141), a reversal based on evidentiary insufficiency "means that the government's case was so lacking that it should not have even been submitted to the jury. Since we necessarily afford absolute finality to a jury's verdict of acquittal  no matter how erroneous its decision  it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty." (Id. at p. 16, 98 S.Ct. 2141, italics omitted.) "A reversal based on the insufficiency of the evidence has the same effect [as a judgment of acquittal] because it means that no rational factfinder could have voted to convict the defendant." (Tibbs, supra, 457 U.S. at p. 41, 102 S.Ct. 2211.) Recognizing that the standard for determining legal insufficiency is the same under federal and California law, we have held that the "`rule of Burks applies to trials conducted in our courts.' [Citation.]" (People v. Hatch (2000) 22 Cal.4th 260, 272, 92 Cal.Rptr.2d 80, 991 P.2d 165.)
The Attorney General, however, maintains that double jeopardy protections under Burks, supra, 437 U.S. 1, 98 S.Ct. 2141, apply only to offenses and not to penalty allegations, like section 664(a) here: "The decisions of the United States Supreme Court and this Court have consistently recognized the clear distinctions between substantive offenses and penalty *185 allegations and the discrete protections extended to those two different areas by the double jeopardy clause." The Attorney General argues that although the high court has extended the rights to a jury trial and to proof beyond a reasonable doubt to any sentence enhancement that increases the penalty beyond the statutory maximum (Apprendi, supra, 530 U.S. at p. 490, 120 S.Ct. 2348), the protections of the double jeopardy clause do not similarly extend to such sentence enhancements. In other words, the Attorney General argues the rationale of Monge II, and not that of Apprendi, controls this case.
In Monge II, the high court stated, "Sentencing decisions favorable to the defendant ... cannot generally be analogized to an acquittal.... The pronouncement of sentence simply does not `have the qualities of constitutional finality that attend an acquittal.' [Citations.]" (Monge II, supra, 524 U.S. at p. 729, 118 S.Ct. 2246.) As the Attorney General notes, the high court has consistently recognized that reconsideration of certain noncapital sentencing issues does not violate double jeopardy protections. (Monge II, supra, 524 U.S. at p. 730, 118 S.Ct. 2246; Caspari v. Bohlen (1994) 510 U.S. 383, 391, 114 S.Ct. 948, 127 L.Ed.2d 236 ["it [is] well established that there is no double jeopardy bar to the use of prior convictions in sentencing a persistent offender"].) Based on the foregoing, we disagree with defendant's characterization that "nothing" in Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, refutes his claim that retrial of the premeditation allegation (§ 664(a)) is barred under Burks, supra, 437 U.S. 1, 98 S.Ct. 2141.
Nonetheless, for reasons that follow, we disagree with the Attorney General that the rationale of Apprendi, supra, 530 U.S. 466, 120 S.Ct. 2348, is irrelevant here, and conclude that under Apprendi, the premeditation allegation (§ 664(a)) is subject to the federal double jeopardy clause.

C. Apprendi

As noted above, Apprendi held that except for prior convictions, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Apprendi, supra, 530 U.S. at p. 490, 120 S.Ct. 2348.)[3] "The high court's reasoning was this: The federal Constitution requires the elements of a crime to be proved beyond a reasonable doubt because they expose the defendant to punishment; likewise, the elements of a sentence enhancement must be proved beyond a reasonable doubt if there is exposure to increased punishment. [Citation.]" (Sengpadychith, supra, 26 Cal.4th at p. 325, 109 Cal.Rptr.2d 851, 27 P.3d 739.) The high court's authority in Apprendi dated from In re Winship (1970) 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368: "Since Winship, we have made clear beyond peradventure that Winship's due process and associated jury protections extend, to some *186 degree, `to determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence.' [Citation.]" (Apprendi, supra, 530 U.S. at p. 484, 120 S.Ct. 2348.)
Examining the differences between a "sentencing factor"[4] and an element of an offense (Apprendi, supra, 530 U.S. at p. 494 & fn. 19, 120 S.Ct. 2348), the high court recognized the "constitutionally novel and elusive distinction between" the two. (Id. at p. 494, 120 S.Ct. 2348, citing McMillan, supra, 477 U.S. at p. 86, 106 S.Ct. 2411.) However, it emphasized that "the relevant inquiry is one not of form, but of effect  does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" (Apprendi, supra, 530 U.S. at p. 494, 120 S.Ct. 2348.) "The degree of criminal culpability the legislature chooses to associate with particular, factually distinct conduct has significant implications both for a defendant's very liberty, and for the heightened stigma associated with an offense the legislature has selected as worthy of greater punishment." (Id. at p. 495, 120 S.Ct. 2348.) "[W]hen the term `sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." (Id. at p. 494, fn. 19, 120 S.Ct. 2348.)
The Attorney General maintains that any argument based on Apprendi, supra, 530 U.S. 466, 120 S.Ct. 2348, "would be logical only if the jury trial and the standard of proof guarantees of the Sixth Amendment were designed to provide the same protections as the double jeopardy clause of the Fifth Amendment." However, the high court has indicated that the principles underlying the double jeopardy clause on the one hand, and the reasonable doubt burden of proof and right to jury trial on the other, are not wholly distinct. *187 (Almendarez-Torres v. United States (1998) 523 U.S. 224, 247, 118 S.Ct. 1219, 140 L.Ed.2d 350 (Almendarez-Torres); see also Sattazahn v. Pennsylvania (2003) 537 U.S. 101, 111, 123 S.Ct. 732, 154 L.Ed.2d 588 (lead opn. of Scalia, J.) ["We can think of no principled reason to distinguish, in this context, between what constitutes an offense for purposes of the Sixth Amendment's jury-trial guarantee and what constitutes an `offence' for purposes of the Fifth Amendment's Double Jeopardy Clause"]; Monge II, supra, 524 U.S. at p. 738, 118 S.Ct. 2246 (dis. opn. of Scalia, J.).)
In Almendarez-Torres, the high court held that a recidivism statute that increased the maximum penalty from two to 20 years was a penalty provision and not a separate crime. (Almendarez-Torres, supra, 523 U.S. at pp. 226, 235, 118 S.Ct. 1219.) The court rejected defendant Almendarez-Torres's argument that it should "adopt a rule that any significant increase in a statutory maximum sentence would trigger a constitutional `elements' requirement." (Id. at p. 247, 118 S.Ct. 1219.) In doing so, the high court stated that it would "find it difficult to reconcile any such rule with our precedent holding that the sentencing-related circumstances of recidivism are not part of the definition of the offense for double jeopardy purposes. [Citation.]" (Ibid., italics added.) Indeed, the high court recognized that some of its decisions, taken together, may stand "for the broad proposition that sometimes the Constitution does require (though sometimes it does not require) the State to treat a sentencing factor as an element." (Id. at p. 242, 118 S.Ct. 1219.)
The Attorney General also emphasizes that the protections outlined in Apprendi are designed to reduce the risk of convicting a defendant erroneously. (See Apprendi, supra, 530 U.S. at p. 484, 120 S.Ct. 2348.) The Attorney General maintains that double jeopardy protections, in contrast, are primarily to preclude successive prosecutions to the embarrassment and expense of the defendant. (See Hernandez, supra, 19 Cal.4th at p. 850, 80 Cal.Rptr.2d 754, 968 P.2d 465 (dis. opn. of Brown, J.) ["the double jeopardy clause preserves and protects interests distinct from ... the presumption of innocence and the right to jury trial"].)
Contrary to the Attorney General's suggestion, the double jeopardy clause is also intended to reduce the risk that a defendant will be convicted in error. (Monge II, supra, 524 U.S. at p. 732, 118 S.Ct. 2246 ["need for reliability accords with one of the central concerns animating the constitutional prohibition against double jeopardy"].) "[T]he Double Jeopardy Clause prevents States from `mak[ing] repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' [Citation.]" (Ibid., italics added.)[5]
Based on the foregoing, we conclude that Apprendi is relevant to determining whether a finding of evidentiary insufficiency (Burks, supra, 437 U.S. at p. 16, 98 S.Ct. 2141) bars retrial of a premeditation allegation (§ 664(a)).

*188 D. Analysis under the Apprendi rationale
If a trier of fact finds the premeditation allegation (§ 664(a)) true, a defendant's sentence for attempted murder increases from a determinate term of five, seven, or nine years to an indeterminate life term with the possibility of parole. (§ 664(a).) By "expos[ing] the defendant to a greater punishment than that authorized by the jury's guilty verdict" (Apprendi, supra, 530 U.S. at p. 494, 120 S.Ct. 2348), section 664(a) is "the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." (Apprendi, supra, at p. 494, fn. 19.) Indeed, in contrast to a doubled sentence (id. at pp. 468-469, 120 S.Ct. 2348; Monge I, supra, 16 Cal.4th at p. 831, 66 Cal.Rptr.2d 853, 941 P.2d 1121), or even an 18-year addition to a two-year sentence (Almendarez-Torres, supra, 523 U.S. at p. 226, 118 S.Ct. 1219), the potential increase here is quite substantial.
Significantly, unlike the sentence enhancements at issue in Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121, and Almendarez-Torres, supra, 523 U.S. 224, 118 S.Ct. 1219, section 664(a) does not involve a defendant's recidivism, which is "a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence. [Citations.]" (Almendarez-Torres, supra, 523 U.S. at p. 243, 118 S.Ct. 1219; see also Apprendi, supra, 530 U.S. at p. 488, 120 S.Ct. 2348.) The high court has made clear that recidivism is different for constitutional purposes. (See, e.g., Apprendi, supra, 530 U.S. at pp. 488, 490, 496, 120 S.Ct. 2348; Monge II, supra, 524 U.S. at p. 728, 118 S.Ct. 2246.) We have also made this difference clear. (Monge I, supra, 16 Cal.4th at p. 838, 66 Cal.Rptr.2d 853, 941 P.2d 1121.) In rejecting the argument that a failure of proof on a prior conviction allegation was like an acquittal at the guilt phase of a criminal trial, we noted in Monge I that "a prior conviction trial is simple and straightforward as compared to the guilt phase of a criminal trial. Often it involves only the presentation of a certified copy of the prior conviction along with the defendant's photograph and fingerprints. In many cases, defendants offer no evidence at all, and the outcome is relatively predictable." (Ibid.)
In contrast to a prior conviction allegation, a section 664(a) allegation requires the trier of fact to determine whether "the attempted murder was willful, deliberate, and premeditated" before imposing the term of life imprisonment with the possibility of parole. "The defendant's intent in committing a crime is perhaps as close as one might hope to come to a core criminal offense `element.'" (Apprendi, supra, 530 U.S. at p. 493, 120 S.Ct. 2348.) Applying the rationale of Apprendi to this case, we conclude that "[w]hereas recidivism `does not relate to the commission of the offense' itself, [citation], [section 664(a)'s] inquiry goes precisely to what happened in the `commission of the offense.'" (Apprendi, supra, 530 U.S. at p. 496, 120 S.Ct. 2348.) Apprendi compels the conclusion that section 664(a) constitutes an element of the offense. (Apprendi, supra, 530 U.S. at p. 494, fn. 19, 120 S.Ct. 2348.)
In arguing that the double jeopardy clause does not bar retrial here, the Attorney General seeks support in Hernandez, supra, 19 Cal.4th 835, 80 Cal.Rptr.2d 754, 968 P.2d 465. In Hernandez, we rejected the argument that Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, was distinguishable because it dealt with a prior conviction allegation, and not an allegation that turned on the characterization of the present offense. (Hernandez, supra, 19 Cal.4th at pp. 840, 842, 80 Cal.Rptr.2d 754, 968 P.2d 465.) "The high court spoke *189 categorically in Monge, concluding that the federal double jeopardy clause does not apply to noncapital sentencing determinations and making no distinction between sentencing retrials that turn on the facts of the present offense and sentencing retrials that turn on the truth of the prior conviction allegation. (Monge, supra, 524 U.S. at p. [724, 118 S.Ct. 2246].)" (Hernandez, supra, 19 Cal.4th at p. 840, 80 Cal.Rptr.2d 754, 968 P.2d 465.) We also stated that if, on remand, "the Court of Appeal concludes that proof of specific intent is necessary [as an element of a serious felony under sections 1192.7, subdivision (c)(8), and 667, former subdivision (a)], the state and federal double jeopardy protections do not preclude retrial of that issue." (Hernandez, supra, 19 Cal.4th at p. 843, 80 Cal. Rptr.2d 754, 968 P.2d 465.)
But Hernandez predated Apprendi, and it must be read in light of that decision. In Hernandez, we recognized that federal constitutional law may dictate that a sentence enhancement be treated as an element of an offense. We ultimately concluded, however, that in that case the prior conviction enhancement should not be treated as such. (Hernandez, supra, 19 Cal.4th at pp. 840-842, 80 Cal.Rptr.2d 754, 968 P.2d 465.) Apprendi now compels the conclusion that the premeditation allegation (§ 664(a)) constitutes an element of an offense. (See ante, 21 Cal.Rptr.3d at pp. 185-189, 100 P.3d at pp. 875-878.) As we have explained above, section 664(a) is not a typical sentencing determination, like a prior conviction allegation, to which double jeopardy protections do not apply. (See Hernandez, supra, 19 Cal.4th at p. 842, 80 Cal.Rptr.2d 754, 968 P.2d 465.)
As noted above, defendant argues that Bright, supra, 12 Cal.4th 652, 49 Cal. Rptr.2d 732, 909 P.2d 1354, is distinguishable. (See ante, 21 Cal.Rptr.3d at p. 184, 100 P.3d at p. 874.) Unlike the situation here, where the Court of Appeal reversed the judgment based on its determination of evidentiary insufficiency, the jury in Bright was "unable to make a finding on the premeditation allegation." (Bright, supra, 12 Cal.4th at p. 658, 49 Cal.Rptr.2d 732, 909 P.2d 1354.) Neither a court nor a jury made a determination that the prosecution failed to prove its case. Significantly, "[a] mistrial does not constitute a termination of jeopardy, and accordingly double jeopardy does not arise from the legal necessity of a mistrial. [Citation.]" (Id. at p. 662, 49 Cal.Rptr.2d 732, 909 P.2d 1354.) This difference in procedural postures distinguishes Bright from the case here.[6] (United States v. DiFrancesco (1980) 449 U.S. 117, 130-131, 101 S.Ct. 426, 66 L.Ed.2d 328 [federal double jeopardy clause bars retrial for evidentiary insufficiency but not for mistrial due to "manifest necessity"].)
The Court of Appeal here found there was "no evidence" of defendant's deliberation or premeditation in his attempt to commit murder. Because the section 664(a) allegation effectively placed defendant in jeopardy for an "offense" (Apprendi, supra, 530 U.S. at p. 494, fn. 19, 120 S.Ct. 2348), the Court of Appeal's determination of evidentiary insufficiency bars retrial of the allegation under the federal double jeopardy clause.[7] (U.S. Const., 5th *190 Amend.; Burks, supra, 437 U.S. at p. 16, 98 S.Ct. 2141.)

III. CONCLUSION
We reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.
WE CONCUR: GEORGE, C.J., KENNARD, BAXTER, WERDEGAR and MORENO, JJ.
Concurring Opinion by KENNARD, J.
I join the majority, whose central holding now embraces a view I articulated in a dissenting opinion eight years ago.
In People v. Bright (1996) 12 Cal.4th 652, 49 Cal.Rptr.2d 732, 909 P.2d 1354, a majority of this court held that a finding that an attempted murder was committed willfully, deliberately, and premeditatedly was merely a penalty provision, not an element of a crime greater than attempted murder. I dissented, suggesting that the federal Constitution may well guarantee the right to a jury trial even if premeditation was "merely a circumstance affecting the penalty for attempted murder." (Id. at p. 692, 49 Cal.Rptr.2d 732, 909 P.2d 1354 (dis. opn. of Kennard, J.).) I noted that such a premeditation finding "will expose the defendant to a penalty of life imprisonment, as compared with a maximum term of nine years for attempted murder without premeditation." (Ibid.) Thus, I said, it might "well be unconstitutional to deprive the defendant of a right to jury trial on the issue of premeditation." (Ibid.) The correctness of that view has now been confirmed by the recent decision of the United States Supreme Court in Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, which in turn compels the result in this case.
Concurring Opinion by BROWN, J.
On more than one occasion, I have expressed the view that double jeopardy principles most likely extend to certain fact-bound sentencing enhancements. (See People v. Hernandez (1998) 19 Cal.4th 835, 848-850, 80 Cal.Rptr.2d 754, 968 P.2d 465 (dis. opn. of Brown, J.); People v. Monge (1997) 16 Cal.4th 826, 845-847, 66 Cal.Rptr.2d 853, 941 P.2d 1121 (conc. opn. of Brown, J.).) Even without the impetus of Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, it was only a matter of time until we confronted a circumstance where the Legislature has effectively recharacterized an element of a substantive crime, ostensibly removing it from the purview of the double jeopardy clause by labeling it a sentencing factor. (See Monge v. California (1998) 524 U.S. 721, 737-741, 118 S.Ct. 2246, 141 L.Ed.2d 615 (dis. opn. of Scalia, J.).)
Because that circumstance is plainly here, I fully agree with the conclusion the rule of Burks v. United States (1978) 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 extends to the Court of Appeal's finding that the evidence was insufficient to establish defendant's attempted murder was "willful, deliberate, and premeditated" under Penal Code section 664, subdivision (a). A simple factual change demonstrates the correctness of that determination: Had the victim died and defendant been convicted of first degree murder pursuant to Penal Code section 189, Burks would clearly preclude retrial of that charge if an appellate court found the same evidentiary deficiency. The difference is that with respect to attempted murder, the Legislature has  arbitrarily, one might argue  designated the "willful, deliberate, and premeditated" finding as the ultimate sentencing determinant, rather than  as with actual *191 murderas the preliminary determinant of the degree of the crime, which in turn sets the defendant's sentence. While Penal Code section 664, subdivision (a), may not be as stark an example of legislative overreaching as that hypothesized by Justice Scalia in his dissent in Monge v. California, supra, 524 U.S. at page 738, 118 S.Ct. 2246, the constitutional implications, both federal and state, are no less self-evident.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise noted.
[2] In other words, "Apprendi treated the crime together with its sentence enhancement as the `functional equivalent' of a single `greater' crime. [Citation.]" (People v. Sengpadychith (2001) 26 Cal.4th 316, 326, 109 Cal.Rptr.2d 851, 27 P.3d 739 (Sengpadychith).)
[3] The high court recently extended the reach of Apprendi to hold that a judge may impose a maximum sentence only if based on facts  even an aggravating fact within a statutory maximum  supported by the jury's verdict or admitted by the defendant. (Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403; but see United States v. Booker (7th Cir.2004) 375 F.3d 508, cert. granted 542 U.S. 957, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004) [presenting the issue whether the federal sentencing guidelines violate the Sixth Amend. because a judge determines the facts to enhance a sentence]; United States v. Fanfan (D.Me.2004) 2004 U.S. Dist. Lexis 18593, 2004 WL 1723114, cert. granted 542 U.S. 956, 125 S.Ct. 12, 159 L.Ed.2d 838 (2004) [same].) For purposes of the issue presented here, the high court's recent holding does not change our analysis under Apprendi.
[4] The high court defined a sentencing factor, in contrast to a sentence enhancement, as "a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense." (Apprendi, supra, 530 U.S. at p. 494, fn. 19, 120 S.Ct. 2348.)

In Sengpadychith, supra, 26 Cal.4th at page 325, 109 Cal.Rptr.2d 851, 27 P.3d 739, we recognized that this court in People v. Wims (1995) 10 Cal.4th 293, 41 Cal.Rptr.2d 241, 895 P.2d 77 (Wims), "concluded that the California Legislature intended all statutory enhancements to be sentencing factors.... [Citation.]" Wims was based primarily on McMillan v. Pennsylvania (1986) 477 U.S. 79, 85-91, 106 S.Ct. 2411, 91 L.Ed.2d 67 (McMillan), which held that there is no federal constitutional right to a jury determination of a "sentencing factor." Because the high court did not overrule McMillan (Apprendi, supra, 530 U.S. at p. 487, fn. 13, 120 S.Ct. 2348), we concluded, "Wims survives as to sentence enhancement provisions that do not increase the statutorily prescribed maximum penalty for the underlying crime." (Sengpadychith, supra, 26 Cal.4th at p. 326, 109 Cal.Rptr.2d 851, 27 P.3d 739.)
Indeed, with respect to the premeditation allegation (§ 664(a)), we recognized that "strictly speaking this portion of section 664 does not constitute an `enhancement' within the meaning of rule 405(c) of the California Rules of Court, which defines `enhancement' as `an additional term of imprisonment added to the base term,' because this statutory provision establishes an increased base term for the crime of attempted murder upon a finding of specified circumstances." (Bright, supra, 12 Cal.4th at p. 656, fn. 2, 49 Cal.Rptr.2d 732, 909 P.2d 1354.) For purposes of the issue presented here, the precise distinction between a sentence enhancement and penalty provision is not important. (But see Robert L. v. Superior Court (2003) 30 Cal.4th 894, 899-900, 135 Cal.Rptr.2d 30, 69 P.3d 951.) The critical feature is that section 664(a) is "an allegation of a circumstance that justifies an increased sentence...." (Bright, supra, 12 Cal.4th at p. 656, fn. 2, 49 Cal.Rptr.2d 732, 909 P.2d 1354.)
[5] People v. Hernandez (2003) 30 Cal.4th 1, 131 Cal.Rptr.2d 514, 64 P.3d 800 does not aid the Attorney General. In that case, we explained that "generally, the double jeopardy guarantee imposes no limitation on the power to retry a defendant who has succeeded in having his conviction set aside on appeal on grounds other than insufficiency of evidence." (Id. at p. 6, 131 Cal.Rptr.2d 514, 64 P.3d 800, italics added.) Here, we are dealing with a double jeopardy claim based on an evidentiary insufficiency.
[6] To the extent our analyses in Bright, supra, 12 Cal.4th 652, 49 Cal.Rptr.2d 732, 909 P.2d 1354, and Hernandez, supra, 19 Cal.4th 835, 80 Cal.Rptr.2d 754, 968 P.2d 465, conflict with intervening high court decisions as discussed herein, they are no longer controlling.
[7] Because we conclude that retrial of the premeditation allegation (§ 664(a)) is barred under the federal double jeopardy clause, we do not discuss whether retrial would be barred under the state double jeopardy clause (Cal. Const., art. I, § 15) or under principles of estoppel or law of the case.