Filed 12/15/14  P. v. Turner CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B253670 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA127535) |
| v. | |
| ANTHONY LEWIS TURNER, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert J. Higa, Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Anthony Lewis Turner, Jr., a member of the 76 East Coast Crips criminal street gang, was convicted following a jury trial of forcible rape with a true finding the rape was committed during the commission of a burglary, first degree (residential) robbery and unlawful possession of a firearm by a felon. The jury found true special allegations that Turner was armed with a firearm during the commission of the offenses and the home invasion robbery was committed to benefit a criminal street gang.[1] On appeal Turner contends only that the evidence was insufficient to support the jury's gang enhancement finding. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Home Invasion Robbery and Rape*

Brittani C., then 26 years old, lived in the upstairs unit of an apartment complex at 77th Place and Hooper Avenue in Los Angeles, a location within the territory claimed by the 76 East Coast Crips. She and Turner had a brief sexual relationship during the three-month period prior to the rape and robbery at issue in this case. Brittani had two children; both children's fathers were members of 76 East Coast Crips.

Some time before October 13, 2012 Brittani acquired more than $100,000—the proceeds of a burglary. Her possession of this large sum of money was known to a number of Brittani's acquaintances, possibly including one of Turner's cousins.

While in her apartment alone on the afternoon of October 13, 2012, Brittani saw Turner and a male companion, Deandre Lett, also a member of 76 East Coast Crips, enter the apartment through a window. The men were wearing stocking masks, but Brittani immediately recognized Turner. Turner, who was holding a loaded revolver, demanded,

---

[1] For simplicity on occasion this opinion uses the shorthand phrase "to benefit a criminal street gang" to refer to crimes that, in the statutory language, are committed "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (Pen. Code, § 186.22, subd. (b); see *People v. Jones* (2009) 47 Cal.4th 566, 571, fn. 2.)

"Where's the money? Where's the money?" Brittani responded, "There's no money here. Do you really think I'm going to keep money here?"

While Lett ransacked the residence, Turner forced Brittani into the bathroom where he sexually assaulted her several times, including forcing her to submit to nonconsensual intercourse. At one point during Turner's attack, Lett came into the bathroom and said he was going to search Brittani's car. After Turner moved Brittani out of the bathroom (and while Lett was outside), she struggled for the gun, biting Turner on the arm. He responded by biting her and striking her in the head. Brittani was able to run back to the bathroom, where she locked the door and escaped through a window.

Once outside the building, Brittani told police officers who were already at the apartment complex, responding to an emergency call of a burglary in progress, that a man with a gun had raped and robbed her in her apartment. Lett was detained on the street outside the apartment complex; he had various items of women's jewelry in his possession when arrested. Turner was not apprehended that day. Three days after the rape and robbery Brittani identified his picture in a photographic lineup. He was arrested the following month.

2. *The Gang Evidence*

In addition to evidence Turner and Lett were members of the 76 East Coast Crips gang and the crimes were committed within territory claimed by that gang, the People introduced the testimony of Los Angeles Sheriff's Detective Marc Boisvert as a gang expert. Boisvert testified 76 East Coast Crips was a subsection of a much larger gang, East Coast Crips: According to Boisvert, there are more than 10 different sets within the larger gang. The primary activities of the East Coast Crips are committing crimes "such as robberies, burglaries, vehicle thefts, carrying firearms, drug sales, assaults, shootings, murders." Asked how rape is viewed in gang culture, Boisvert testified, "It's frowned upon."

The prosecutor then posed a hypothetical to Boisvert, closely tracking the facts of this case but omitting the sexual assault, and asked him if, in his opinion, the robbery

committed by the two gang members would be for the benefit of, at the direction of, or in association with the East Coast Crips gang. Boisvert answered, "[T]hat type of crime is a crime that will absolutely benefit the gang through monetary reasons, through their association of two 76 East Coast Crips gang members working together to commit this crime to gain the money; will benefit the gang not only for monetary reasons but will benefit the gang for their status within the gang, talking about putting in the work and their level of status with the gang." Asked if it is important that there were two gang members involved, rather than just one, Boisvert responded, "It helps them to—working together, trusting each other, knowing that this other person's going to do the job of not telling on him, of being able to get away, to elude police officers . . . ."

On cross-examination Detective Boisvert testified he would consider an individual who "hangs out" with members of a specific gang and commits crimes with them to be an associate of the gang—both "hypothetical" factors that described Brittani. However, without more information he could not determine whether that individual was a member of the gang. And if the individual was a woman and she has children with East Coast Crips gang members, Boisvert would consider her to be an even closer associate of the gang. Defense counsel then asked whether it would benefit the East Coast Crips gang for two members of the gang to rape and rob a woman who was an associate of that gang. Boisvert's answer was equivocal, "I'd have to know what her standing was within the gang, if she had negative standing, I would need more . . . . A lot of times they strictly rely on fear and intimidation when they are committing their crimes, so if they commit this crime and they do that out of fear and intimidation, it raises their status—the gang status, it could. But at the same time your hypothetical where, if they go ahead and they just do an act that's going to disrespect the gang by doing that to another gang member's wife, then sure, it would not benefit the gang."

Turner did not testify on his own behalf. None of the three witnesses who testified for the defense (his aunt, his mother and his cousin) presented any evidence relevant to the criminal street gang enhancement allegation.

4

3. *The Pretrial Motion To Dismiss, Verdict and Sentence*

The information filed February 6, 2013 charged Turner with forcible rape with a special allegation the rape had occurred during the commission of a burglary bringing it within the "One Strike" law (Pen. Code, § 667.61, subds. (b) & (e)), home invasion robbery and unlawful possession of a firearm by a felon. It was also specially alleged Turner was armed with a firearm during the commission of all three offenses and all the offenses had been committed to benefit a criminal street gang.

Prior to trial defense counsel moved to dismiss the criminal street gang enhancements pursuant to Penal Code section 995. The court granted the motion with respect to the rape and unlawful firearm possession counts, but denied it as to the home invasion robbery.

The jury found Turner guilty of all three charges and found true all special allegations submitted to it, including a finding the robbery had been committed for the benefit of a criminal street gang. (Pen. Code, § 186.22, subd. (b)(1)(C) [10-year enhancement for "violent felony" committed to benefit a criminal street gang].) Turner was sentenced to an aggregate indeterminate state prison term of 51 years to life.[2]

## DISCUSSION

1. *Standard of Review and Applicable Law*

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings,

---

[2] In a bifurcated proceeding the court found true special allegations that Turner had served three separate prison terms for prior felony convictions within the meaning of Penal Code section 667.5, subdivision (b). It dismissed those allegations for purposes of sentencing only.

5

reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]  'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'"  (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60 (*Albillar*); accord, *People v. Livingston* (2012) 53 Cal.4th 1145, 1170.)  "The relevant facts must, however, meet the statutory requirements for a gang enhancement in order for it to apply."  (*People v. Garcia* (2014) 224 Cal.App.4th 519, 523.)

To obtain a true finding on a criminal street gang enhancement allegation, the prosecution must prove the underlying offense was "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ."  (Pen. Code, § 186.22, subd. (b)(1).)  As used in this statute, "'criminal street gang' means any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated [in portions of Penal Code section 186.22, subdivision (e)], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."  (Pen. Code, § 186.22, subd. (f).)  "Pattern of criminal gang activity," in turn, is defined to mean "the commission or attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of [the specified] offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions or by two or more persons."  (Pen. Code, § 186.22, subd. (e).)  Turner does not challenge the sufficiency of the evidence to support the jury's finding the 76 East Coast Crips was a criminal street gang as so defined.

To establish the remaining element of the enhancement allegation, two prongs must be met:  First, there must be evidence the underlying felony was "'committed for

6

the benefit of, at the direction of, or in association with any criminal street gang.'" Second, there must be evidence the defendant had "'the specific intent to promote, further, or assist in any criminal conduct by gang members.'" (See *Albillar*, *supra*, 51 Cal.4th at p. 51; *People v. Gardeley* (1996) 14 Cal.4th 605, 615-616.)

2. *There Was Sufficient Evidence To Support the Gang Enhancement*

Evidence two gang members had acted in concert during an armed, home invasion robbery within territory claimed by the gang, coupled with a gang expert's opinion testimony such robberies are committed both to fund the gang and to enhance the members' reputation within the gang, constitutes ample evidence the crime was committed for the benefit of, or in association with, a criminal street gang. (See, e.g., *People v. Vang* (2011) 52 Cal.4th 1038, 1048 ["'[e]xpert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support the Penal Code section 186.22, subdivision (b)(1), gang enhancement"]; *People v. Gardeley, supra,* 14 Cal.4th at p. 619 [from expert testimony assault was classic gang activity that frightened residents and secured gang's drug-dealing stronghold in the area, jury could reasonably conclude charged offense was committed for benefit of gang]; *People v. Ferraez* (2003) 112 Cal.App.4th 925, 930-931 [jury could reasonably infer crime was gang-related from expert testimony coupled with other evidence]; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1178-1179 ["evidence that defendant knowingly committed the charged crimes in association with two fellow gang members was sufficient to support the jury's findings on the gang enhancements"]; see also *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1332 [holding two gang members who committed a robbery did so "in association with" the gang].) The testimony strongly supporting a true finding on the criminal street gang enhancement in this case, however, was diluted by Detective Boisvert's acknowledgement that sexual assaults are "frowned upon" within gang culture and his concession on cross-examination, depending on the status of the victim, it would not benefit the gang to rape and rob a fellow gang member's

7

wife.  (See *Albillar, supra*, 51 Cal.4th at p. 60 ["[n]ot every crime committed by gang members is related to a gang"].)

Based on Detective Boisvert's cross-examination, the jury certainly would have been justified in rejecting the gang enhancement allegation in this case.  However, the jury was asked to find the enhancement true only with respect to the robbery, not the rape.  Turner's and Lett's behavior inside the apartment—while Turner was sexually assaulting Brittani, Lett was searching for Brittani's money and other valuables— together with Boisvert's expert opinion testimony, considered as a whole, reasonably supported the conclusion the two men jointly carried out the robbery to benefit their gang, while Turner's sexual assault of Brittani was personal.  (See *Albillar, supra*, 51 Cal.4th at p. 60; *People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

Having concluded the home invasion robbery was gang-related, there was compelling evidence to support the additional finding Turner had committed the robbery with the specific intent to promote, further or assist criminal conduct by gang members— the final prong of the criminal street gang enhancement:  Turner and Lett unquestionably intended to assist each other when acting in concert in the commission of the crime. There is no requirement the "criminal conduct by gang members" be distinct from the charged offense:  "[T]he scienter requirement in section 186.22(b)(1)—i.e., 'the specific intent to promote, further, or assist in any criminal conduct by gang members'—is unambiguous and applies to *any* criminal conduct, without a further requirement that the conduct be 'apart from' the criminal conduct underlying the offense of conviction sought to be enhanced."  (*Albillar, supra*, 51 Cal.4th at p. 66.)  "There is no further requirement that the defendant act with the specific intent to promote, further, or assist a *gang*; the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members*."  (*Id*. at p. 67; see *People v. Villalobos* (2006) 145 Cal.App.4th 310, 322 ["[c]ommission of a crime in concert with known gang members is substantial evidence which supports the inference that the defendant acted with the specific intent to promote, further or assist gang members in the commission of the crime"].)

8

**DISPOSITION**

The judgment is affirmed.

PERLUSS, P. J.

We concur:

ZELON, J.

SEGAL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.